AMBERLEY SWIM & COUNTRY CLUB, INC., APPELLANT, *v.* ZONING BOARD OF APPEALS OF AMBERLEY VILLAGE ET AL., APPELLEES.*

---

*Motion to certify the record overruled (38146), June 12, 1963. Appeal dismissed, 175 Ohio St., 127.

(No. 9188—Decided February 25, 1963.)

Mr. *Carl B. Rubin*, for appellant.
Mr. *Augustus Beall*, for appellee Zoning Board of Appeals of Amberley Village.
Mr. *James L. Elder*, for appellees Hugo A. Haller and Helen Hesselbrock.

HOVER, P. J. Appellant is the holder of an option to purchase four to five acres of land in the appellee village for the purpose of constructing a privately owned subscription swim club, with pool, shelter house, parking area and other appropriate and incidental facilities.

The tract is an elongated rectangle fronting on a principal thoroughfare of the village. It is bounded on the east and north by undeveloped publicly owned land, on the south by the residence and surrounding acreage of the present owner, and on the west and northwest by lots of an acre or more, either now used or available for residential purposes.

Appellant originally received from the appropriate village official a "Certificate of Occupancy" for its club. Residents in the vicinity of the land involved appealed to the village Zoning Board of Appeals which, after hearing, ordered the certificate revoked on the ground that the proposed use was not permissible under the village zoning ordinance in a residence "A" district.

Appellant thereupon appealed to the court below, where a trial was had on the basis of the proceedings before the village board. There was also testimony taken in the lower court. That court agreed with the decision of the village board and refused to direct the issuance of a certificate for a swim and country club on the land involved.

The appellant now makes, successively, three contentions:

(1) The appellant was entitled to a certificate of occupancy under the specific provisions of the village zoning ordinance; if not,

(2) the appellant was entitled to a certificate on the basis of a "variance," and the refusal of the board to so order was unreasonable and an abuse of discretion; if not,

(3) the zoning ordinance is invalid as to the property involved in this case.

This property is part of a much larger tract, lived on and held for a number of years by the present owner. A creek and sewer run the length of the acreage involved. The land is lower than the surrounding territory, by from a few feet to as much as 50 feet. The particular part of the property is presently undeveloped for any purpose.

As to the first proposition above, the zoning ordinance permits the use of residence "A" land for, among other things, "country clubs, golf courses." This provision has been in the ordinance since the incorporation of the village many years ago. The record shows that then, as now, a country club, including a golf course, was located in the village. There is evidence in the record that at the time the zoning ordinance was adopted, there was a possibility that a golf course might also be built but without accompanying club facilities. This possibility was known to the framers of the ordinance.

Appellant claims that the proposed swim club and related facilities is a country club under this provision. No precise definition of a "country club" is available. However, there is no doubt that the phrase, as generally met in common useage and particularly as used in the ordinance, contemplates a golf course as a principal, if not a necessary, adjunct. On the other hand, common knowledge would again indicate that it is entirely possible to have a golf course without the additional services and facilities ordinarily associated with the term "country club."

While it is also true that a golf course is not subject to precise definition, there is again no doubt that it contemplates in its normal context a comparatively large unobstructed acreage involving enough room over which to walk or ride, point-to-point, over a generally prescribed course, and to strive to send a ball long distances with variable accuracy, all without unreasonably endangering other players or intruding upon them. Regardless of what may or may not be the exact definition either of a country club or a golf course, it is obvious that appellant cannot,

merely by the adoption of a corporate title, make a country club of itself as that phrase is ordinarily understood. It is equally obvious that land, the primary use of which is devoted to a swimming pool and shelter house, does not constitute a country club as intended by the ordinance.

Appellant was not, therefore, entitled to the issuance of a certificate of occupancy under the terms of the zoning ordinance.

Appellant contends also that under the law it is entitled to a "variance" from the strict terms of the ordinance. Cases have occasionally recognized the necessity of tempering a strict interpretation by permitting barred uses which do not affect the health, safety and morals of the community (churches, etc.), and also by permitting new uses consistent with the actual growth and development of large areas (as, for example, shopping centers and their proximity to lesser restricted uses).

While it is obviously something of a paradox to hold that a facility for outdoor swimming, conducive as it may be to the health and well-being of the individual swimmer, can yet in contemplation of permissible zoning procedures not be conducive to the public health, safety and welfare; this court observed correctly in *Urmston* v. *City of North College Hill*, 114 Ohio App., 213 that "It is the best interest of the entire district, rather than the adaptability of a particular piece of property that determines the reasonableness of a zoning ordinance."

While that case dealt with a requested amendment to an ordinance, the situation in regard to a "variance" is the same. In the case at bar, all the property in the immediate vicinity of the proposed swim club is zoned residence "A" and has been so since the adoption of the ordinance. Among the valid considerations in determining the effect of land use upon the legitimate regulations of zoning ordinances, is the intensity of such use. It is for this reason that lot sizes and yard requirements are subject to reasonable regulation; that building heights are subject to regulation; and that the purpose to which a tract or building is devoted is subject to valid regulation.

In the instant case, the proposed use of the comparatively small tract as a private swim club represents an intensity of land use greater than the present use of all the surrounding land. To this extent, if to no other, the proposed "variance" does bear upon the public health, safety and general welfare

and is a distinct departure from the use and purpose of all the adjacent territory, including the undeveloped condition of the public land. Under such circumstances, the proposed occupancy is not entitled to a "variance" as of right, nor was it arbitrary or unreasonable in the proceedings below to refuse to order this particular "variance," especially in the absence of any substantial showing that it is the only use to which this property is reasonably adaptable.

The case of *Mentor Lagoons, Inc.*, v. *Zoning Board of Appeals*, 168 Ohio St., 113, cited by counsel for both sides of the present controversy, is not inconsistent with this viewpoint, since the case holds that one proposed use (polo) of an otherwise isolated tract is beyond the reach of township zoning as being related, however remotely, to agriculture; while the other proposed use (trap shooting) is not permitted by the zoning resolution and the refusal to grant such a variance to permit it is a reasonable exercise of the board's discretion.

It is true that zoning regulations, both as written and as applied to a particular piece of property, must bear a substantial relation to the public health, safety, morals or general welfare in order to avoid being an unconstitutional invasion of private property or a taking of it without compensation. It must nevertheless be noted in this case that the ordinance itself and its provisions are of long-standing application, not only as to this particular segment of the owner's larger tract, but in regard to all the territory surrounding it to such a degree that any exceptions whatsoever to the residence "A" classification are almost nonexistent throughout the entire village and are confined to property far removed from the tract in question. To hold that the ordinance applying to this portion of the owner's property would amount to an unconstitutional taking of it without compensation, solely because of its unusual topography and possible diminished value as residence property compared to the land immediately surrounding it, would be to hold that these factors would make it constitutionally entitled to very special treatment. This the law does not require. It would constitute the improper indulgence on the part of the courts in the most objectionable features of "spot zoning."

For the foregoing reasons, it is the opinion of this court that the proposed private swim and country club does not come

within the use permitted by the ordinance in a residence "A" district under its "country clubs golf courses" provision. It is the further opinion of the court that the action of the Zoning Board of Appeals and of the court below in finding that the tract in question was not lawfully entitled to a "variance" constitutes a reasonable exercise of the discretion lodged in that board. It is the further opinion of the court that the zoning of this particular tract as residence "A" and its continued inclusion in such zone does not amount to a taking of private property without compensation and it is a valid exercise of the power to zone.

*Judgment affirmed.*

HILDEBRANT and LONG, JJ., concur.