ED JACKAMONIS, Speaker Wisconsin State Assembly
You have requested my opinion on whether the fact that a country club proposes to open its golf course to the general public upon payment of a greens fee, but will continue to restrict the use of the clubhouse including bar facilities to members and their guests, would operate to disqualify the club from obtaining class "B" liquor and beer licenses from the Secretary of the Department of Revenue.
The answer to your question is yes.
These licenses, commonly known as country club licenses, are issued by the Secretary pursuant to secs. 176.05(4a) and 66.054 (23), Stats., for liquor and beer respectively.
Section 176.05(4a), Stats., provides that: "All `Class A' and `Class B' licenses issued to clubs, as defined in s. 176.01 (8), . . . *Page 249 
which are commonly known as country clubs, . . . shall be issued by the secretary of revenue." Section 66.054(23), Stats., states that: "All Class `B' licenses issued to clubs, as defined in s. 176.01 (8), . . . which are commonly known as country clubs, and are not open to the general public, . . . shall be issued by the secretary of revenue if no such licenses are issued by the governing body."
Both statutes refer specifically to sec. 176.01(8), Stats., for the definition of club which definition states in pertinent part as follows: "`Club' means an organization, whether incorporated or not, which is the owner, lessee or occupant of a building used exclusively for club purposes, and which is operated solely for a recreational . . . or athletic purpose but not for pecuniary gain."
In view of the definitions and terms used in these three statutes, the resolution to your question is found in the following analysis. Do the terms "club," "country club," and "not open to the general public" refer only to the clubhouse proper or do they refer to all of the facilities including the golf course?
A country club has been defined as follows: "A social club, usually in the outskirts of a city, equipped with a clubhouse,golf course, etc." See Webster's New World Dictionary 325 (2d College ed. 1974) (emphasis supplied). The term country club has also been defined as follows: "`country club' as permitted use under residence `A' zoning ordinance contemplates a golf course as a principal if not a necessary adjunct." See Amberley Swim Country Club v. Zoning Bd. of App., 117 Ohio App. 466,191 N.E.2d 364 (1963) (emphasis supplied).
Emerging from these definitions is the concept that the term "country club" embraces all of the facilities of the club and not just the barroom or lounge which may be contained in the clubhouse building.
Another valuable source of analytical assistance is contemporaneous and practical interpretation of the particular statutes by the agencies and executive officers which are charged with enforcement of the statutory provisions. "Long-continued contemporaneous and practical interpretation of a statute by the executive officers charged with its administration and enforcement, the courts, and the public constitutes an invaluable aid in determining the meaning of a doubtful *Page 250 
statute." 2A Sands, Sutherland Statutory Construction, sec. 49.03 at 233 (4th ed. 1973).
Further, as pointed out in Sutherland, "Interpretive regulations by officers, administrative agencies, departmental heads and others officially charged with the duty of administering and enforcing a statute, and their practices which reflect the understanding they have of provisions they are charged to carry out, have great weight in determining the operation of a statute." Id., sec. 49.05 at 238 (emphasis supplied).
I have been advised that the departments of state government charged with enforcement of the provisions here involved, which have from time to time been the Department of Justice and the Department of Revenue and is now the Department of Revenue, have in fact interpreted these provisions. Since 1950 the statutes have been continuously interpreted and applied to require exclusion of the general public from all facilities, including golf courses, of a club in order for that club to qualify for the "country club" liquor licenses issued pursuant to the instant statutes. If the club allows its golf course, its dining room or bar facilities, or any other facilities to be used by the general public, that club loses its status as a "country club" under the pertinent statutes and is disqualified from obtaining country club liquor licenses. There has therefore been thirty years of contemporaneous and practical interpretation of these statutes by the agencies involved in, and charged with, their enforcement.
It may also be interesting to note that the Legislature apparently gave recognition to this long-standing construction in 1969 by virtue of 1969 Assembly Bill 75. That bill attempted to amend that statute by adding the following language: "Neither status of patrons as to whether or not they are club members, guests or members of the general public nor source or amount of income of the club shall be considered in determining whether any country club is entitled to any license under this chapter." On August 29, 1969, the Governor vetoed that bill. The Legislature failed to override that veto on October 22, 1969, and the Legislature has apparently never attempted again to amend that statute.
It should also be noted that it has been said in this regard that to interpret a statute in a way which would overtax enforcement *Page 251 
machinery is considered to be unreasonable and is therefore disfavored. See United States v. Del Toro, 513 F.2d 656 (2d Cir. 1975).
It would appear reasonable to conclude further that to interpret these statutes so as to allow the general public to use part of the facilities, but not other parts, would result in overtaxing the enforcement machinery in checking to see whether or not any members of the general public who have been using the golf course have entered and are using the clubhouse bar facilities thereby resulting in violation of the liquor and beer laws. Such an interpretation would therefore be unreasonable and should be disfavored.
Therefore, based upon the approximate thirty years of contemporaneous and practical interpretation of the statutes involved, together with the Legislature's apparent recognition of that interpretation and failure to change the law, I conclude that if a country club opens any of its facilities to the use of the general public it becomes ineligible to receive a "country club" liquor or beer license from the Secretary pursuant to secs. 176.05(4a) and 66.054(23), Stats. In addition, to conclude otherwise would unreasonably overtax the enforcement machinery.
BCL:JCM